UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DB STRUCTURED PRODUCTS, INC.

                Plaintiff,

         -against-

MARIBELLA MORTGAGE, LLC

                Defendant.

**ECF CASE**

**07 Civ. 4120 (DLC)**

**AFFIDAVIT OF JOHN P. DOHERTY IN SUPPORT OF APPLICATION FOR DEFAULT JUDGMENT**

STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF NEW YORK   )

John P. Doherty, being duly sworn, deposes and says:

1.      I am a member of the Bar of this Court and a member of THACHER PROFFITT & WOOD LLP, attorneys for Plaintiff, DB Structured Products, Inc. ("Plaintiff") in the above-captioned matter.

2.      I submit this affidavit pursuant to Rule 55.2(b) of the Civil Rules for the Southern District of New York in support of Plaintiff's application for a Default Judgment against Maribella Mortgage, LLC ("Defendant").

3.      On May 25, 2007 the above-captioned action ("Action") was commenced with the filing of the Complaint.

4.      On June 5, 2007, a copy of the (i) Complaint; (ii) Summons; (iii) Explanation of Relatedness; (iv) Statement Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure; (v) Civil Cover Sheet; (vi) Individual Practices of Judge Denise Cote; (vii) Individual Rules of Practice of Judge Kevin Nathaniel Fox; (viii) 3rd Amended Instructions For Filing An Electronic

Case or Appeal; (ix) Procedures for Electronic Case Filing; and (x) Guidelines for Electronic Case Filing were properly served on Defendant by personally serving Defendant's registered agent, Keith White, 3600 Minnesota Drive #160, Edina, MN 55435. A true and correct copy of the Summons and Complaint is attached hereto as Exhibit A.

5.    On June 27, 2007, proof of such service was filed with the Clerk. A true and correct copy of such proof of service is attached hereto as Exhibit B.

6.    Defendant has failed to plead or otherwise defend this Action.

7.    The time within which Defendant was permitted to file an answer to the Complaint or otherwise move has now expired and has not been extended.

8.    On September 19, 2007, the Clerk of the Court entered a Certificate of Default against the Defendant. The Certificate of Default is attached hereto as Exhibit C.

9.    As more fully set forth in the Complaint attached hereto as Exhibit A, the Plaintiff's claim is contractual in nature inasmuch as damages sought in the Complaint arise from Defendant's breach of its duties and obligations under a Seller Loan Purchase Agreement ("Agreement") entered into between Plaintiff and Defendant on or about December 9, 2005. Damages to be awarded Plaintiff pursuant to a default judgment can be readily determined by reference to the Agreement and other exhibits to the Complaint. Such damages currently amount to $13,091,851.61, as more fully set forth in the Statement of Damages, attached hereto as Exhibit D. The "Attorneys' Fees and Costs" component of the damages is more fully described in the Affidavit of John P. Doherty With Respect to Attorneys' Fees and Costs, attached hereto as Exhibit E.

10.    As such, an inquest is not necessary to determine Plaintiff's damages.   In the event the Court believes an inquest is necessary, for the foregoing reasons, an inquest can be held and damages determined thereby without the Defendant's presence or participation.

11.    Within thirty (30) days following payment in full of the amount awarded by the Default Judgment, Plaintiff shall return to Defendant the Mortgage Loans[1] as set forth in the Agreement.

12.    Accordingly, Plaintiff requests that Defendant show cause why a default judgment should not be entered against it.   A proposed Default Judgment has been attached hereto as Exhibit F.

By: _____
JOHN P. DOHERTY

Sworn to before me this
20th day of September 2007

_____
Notary Public

JONATHAN E. WILSON
Notary Public, State of New York
No. 01WI6091214
Qualified in Bronx County
Certificate Filed in New York County
Commission Expires April 28, 2011

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Complaint.

# EXHIBIT   A

AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

_____ **SOUTHERN** _____ **DISTRICT OF** _____ **NEW YORK** _____

DB STRUCTURED PRODUCTS, INC.

**V.**

MARIBELLA MORTGAGE, LLC

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

07-CV-4120

TO: (Name and address of defendant)

MARIBELLA MORTGAGE, LLC
3600 Minnesota Drive, Suite 650
Edina, MN 55435-7926

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

THACHER PROFFITT & WOOD LLP
Richard F. Hans (RH-0110)
John P. Doherty (JD-3275)

Two World Financial Center
New York, New York 10281
(212) 912-7400

an answer to the complaint which is herewith served upon you, within _____ **TWENTY** _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

**J. MICHAEL McMAHON**

MAY 2 5 2007

CLERK

(BY) DEPUTY CLERK

DATE

AO 440 (Rev. 10/93) Summons In a Civil Action -SDNY WEB 4/99

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and Complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____
_____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left: _____
_____

☐ Returned unexecuted: _____
_____
_____
_____

☐ Other *(specify):* _____
_____
_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____　　_____
　　　　　　　　　Date　　　　　　　　　　　　　　　Signature of Server

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　Address of Server

(1)　As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK





DB STRUCTURED PRODUCTS, INC.

               Plaintiff,

          -against-

MARIBELLA MORTGAGE, LLC

               Defendant.

Civ. No. _____

**COMPLAINT**

MAY 2 5 2007

Plaintiff DB Structured Products, Inc. ("DBSP" or "Plaintiff"), by its attorneys, Thacher Proffitt & Wood LLP, for its complaint against defendant Maribella Mortgage, LLC ("Defendant") (Plaintiff and Defendant, collectively, the "Parties") alleges as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over all claims based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000, exclusive of interest and costs.

2.    Venue is proper pursuant to 28 U.S.C. § 1391(a).

## THE PARTIES

3.    Plaintiff DBSP is a corporation organized and existing under the laws of the State of Delaware. DBSP maintains its principal place of business at 60 Wall Street, New York, New York.

4.    Upon information and belief, Defendant is a corporation organized and existing under the laws of the State of Minnesota and maintains its principal place of business at 3600 Minnesota Drive, Suite 650, Edina, MN.

## FACTUAL ALLEGATIONS

**The Seller Loan Purchase Agreement**

5.      On or about December 9, 2005, DBSP and Defendant entered into a Seller Loan Purchase Agreement (the "Purchase Agreement"). A copy of the Purchase Agreement is attached hereto as Exhibit 1. Exhibit 1 is hereby incorporated herein as if fully set forth.

6.      As set forth in Section 13 of the Purchase Agreement, the Parties agreed that the Purchase Agreement "shall be governed by, and construed and enforced in accordance with, the laws of the State of New York in effect at the time of execution hereof and applicable to agreements executed and performed in New York, without giving effect to conflict of laws principles thereof."

7.      As set forth in Section 13 of the Purchase Agreement, Defendant consented to DBSP bringing any action relating to the Purchase Agreement in the United States District Court for the Southern District of New York and consented to the jurisdiction of this Court.

8.      In connection with individual transactions between the Parties pursuant to the Purchase Agreement, DBSP and Defendant also entered into letter agreements, including, but not limited to, those dated August 8, 2006, August 10, 2006, August 22, 2006, September 12, 2006, October 11, 2006, October 12, 2006 and November 1, 2006 (collectively, the "Letter Agreements", and together with the Purchase Agreement, the "Agreements").

9.      The Letter Agreements state that they "shall be governed in accordance with the laws of the state of New York, without regard to conflict of laws rules."

**Defendant's Failure to Repurchase**
**Loans With Early Payment Defaults From DBSP**

10.      Pursuant to the Agreements, Defendant from time to time offered to sell and DBSP agreed to purchase certain mortgage loans ("Mortgage Loans") in accordance with the

2

terms of the Agreements and the Deutsche Bank Correspondent Lending Seller Guide (the "Seller Guide").

11.    Pursuant to Section 9 of the Purchase Agreement, Section 2(c) of the Letter Agreements and Volume 1 of the Seller Guide, Defendant agreed to repurchase any Mortgage Loan in early payment default, as described in the Agreements and the Seller Guide.

12.    Pursuant to the Agreements and the Seller Guide, DBSP may, in its sole discretion, determine that a Mortgage Loan is in early payment default and thus subject to the repurchase obligation.

13.    Certain of the Mortgage Loans experienced early payment or early delinquency defaults, as described in the Letter Agreements and the Seller Guide (hereinafter, such Mortgage Loans shall be collectively referred to as "Early Payment Default Loans"). Attached as Exhibit 2 is a schedule of the Early Payment Default Loans, which is hereby incorporated herein as if fully set forth.

14.    Accordingly, pursuant to Section 9 of the Purchase Agreement, Section 2(c) of the Letter Agreements and Volume 1 of the Seller Guide, Defendant is obligated to remit to DBSP the Repurchase Price (as defined in the Letter Agreements and the Seller Guide) with respect to each Early Payment Default Loan.

15.    On April 26, 2007, DBSP issued a demand to Defendant to repurchase the Early Payment Default Loans on or before May 10, 2007 (the "Demand Letter"). Attached as Exhibit 3 is a copy of the Demand Letter which is hereby incorporated herein as if fully set forth.

16.    In addition, prior to DBSP's issuance of the Demand Letter, DBSP also notified Defendant via one or more emails and/or other communications that certain Mortgage Loans, including the Early Payment Default Loans, were in early payment default status. In addition to

3

the Demand Letter, these email notifications separately triggered Defendant's obligations to repurchase such Early Payment Default Loans, pursuant to the Agreements and the Seller Guide.

17.    To date, Defendant has failed to repurchase the Early Payment Default Loans, or otherwise compensate DBSP, notwithstanding its clear contractual obligation to do so.

18.    The aggregate Repurchase Price for the Early Payment Default Loans, excluding attorneys' fees and other costs and expenses, exceeds $12.56 million.

19.    DBSP has performed all of its obligations under the Agreements and the Seller Guide.

20.    As a result of Defendant's failure to repurchase the Early Payment Default Loans, DBSP is required to maintain possession and maintenance of the Early Payment Default Loans, and may be exposed to any claims or losses that might be sustained by reason of ownership of each such loan.  Moreover, because the Early Payment Default Loans are in default, DBSP is unable to include certain of the Early Payment Default Loans in securitizations or other packages, a specific purpose, known to Defendant, for which DBSP purchased the Early Payment Default Loans.  Accordingly, DBSP's harm is not solely monetary and cannot be adequately compensated by damages.

**Indemnification**

21.    Pursuant to Section 5 of the Purchase Agreement, Defendant agreed to indemnify, defend and forever hold harmless DBSP, from and against any and all liabilities, loss, injury or damages, judgments, claims, demands, actions or proceedings, together with all reasonable costs and expenses relating thereto (including but not limited to attorneys' fees) by whomever asserted, relating to Defendant's breach of a representation, warranty, covenant, agreement or obligation of Defendant under the Purchase Agreement.

4

22.     Pursuant to the Seller Guide, Defendant agreed to indemnify and hold harmless DBSP from all losses, damages, penalties, fines, forfeitures, court costs and attorneys' fees, judgments, and any other costs, fees and expenses resulting from any breach of any warranty, obligation or representation under the Purchase Agreement.

23.     Defendant has breached the representations and warranties in Section 9 of the Purchase Agreement and in the Seller Guide that Defendant would repurchase the Early Payment Default Loans from DBSP. As a result, Defendant owes DBSP indemnification for all liabilities, loss, injury or damage, penalties, fines, forfeitures, judgments, damages, claims, demands, actions or proceedings, together with all reasonable costs and expenses relating thereto (including but not limited to attorneys' fees) that DBSP may sustain.

24.     Pursuant to the Purchase Agreement and the Seller Guide, Defendant agreed that it will indemnify DBSP and hold it harmless against all court costs, attorneys' fees and any other costs, fees and expenses incurred by DBSP in enforcing the Purchase Agreement.

25.     Defendant's indemnification obligations survive the Purchase Date, the termination of the Purchase Agreement and the disqualification or suspension of Defendant.

26.     Defendant's indemnification obligations expressly include the legal fees and related costs and any other costs, fees and expenses DBSP may sustain in connection with Defendant's failure to observe and perform its obligation to repurchase the Early Payment Default Loans, including but not limited to, the attorneys' fees and other expenses incurred by DBSP in this action.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract - Agreements)

27.     Plaintiff DBSP realleges paragraphs 1 through 26 of this complaint as if fully set forth herein.

5

28.    Under the Agreements and the Seller Guide, Defendant agreed to repurchase the Early Payment Default Loans from DBSP.

29.    DBSP has demanded that Defendant repurchase the Early Payment Default Loans.

30.    Defendant has refused and failed to repurchase the Early Payment Default Loans.

31.    As a direct, proximate and actual result of Defendant's breach of its obligation to repurchase the Early Payment Default Loans, DBSP has suffered damages in an amount to be determined at trial, but which is not less than $12.56 million as of April 19, 2007, plus interest.

## SECOND CLAIM FOR RELIEF
### (Unjust Enrichment)

32.    Plaintiff DBSP realleges paragraphs 1 through 31 of this complaint as if fully set forth herein.

33.    In consideration of the sale of the Early Payment Default Loans by Defendant to DBSP, Defendant received payment from DBSP.

34.    Defendant has wrongfully refused to repurchase the Early Payment Default Loans, causing DBSP to lose the use of those moneys due and owing, and requiring DBSP to incur attorneys' fees to recover these costs due under the Agreements and the Seller Guide. It would be unjust and inequitable to allow Defendant to benefit in this manner.

35.    By reason of the foregoing, Defendant has been unjustly enriched at the expense of DBSP, and DBSP has suffered damages in an amount to be established at trial.

## THIRD CLAIM FOR RELIEF
### (Indemnification for Legal Fees And Related Costs)

36.    Plaintiff DBSP realleges paragraphs 1 through 35 of this complaint as if fully set forth herein.

6

37.    Pursuant to Section 5 of the Purchase Agreement and the indemnification provisions in the Seller Guide, Defendant agreed to indemnify DBSP for any and all claims, losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, fees and expenses that DBSP may sustain that are in any way related to Defendant's breach of Defendant's representations, warranties, covenants, agreements or obligations under the Purchase Agreement and the Seller Guide.

38.    Defendant has breached its representations and warranties and failed to observe its obligations, causing DBSP to suffer the damages for which Defendant owes indemnity.

39.    Defendant is therefore liable to DBSP for all of DBSP's legal fees and related costs, and all other costs, fees and expenses that DBSP has incurred, is incurring and will incur in connection with Defendant's failure to observe and perform its obligations to repurchase the Early Payment Default Loans.

### FOURTH CLAIM FOR RELIEF
### (Specific Performance)

40.    Plaintiff DBSP realleges paragraphs 1 through 39 of this complaint as if fully set forth herein.

41.    The Agreements and Seller Guide are valid, enforceable contracts between Defendant and DBSP.

42.    Under the terms of the Agreements and Seller Guide, DBSP and Defendant made several valid and enforceable mutual agreements.

43.    DBSP substantially performed its obligations under the Agreements and Seller Guide by, *inter alia,* purchasing Mortgage Loans from Defendant pursuant to the terms and provisions of the Agreements and the Seller Guide.

7

44.    DBSP is willing and able to perform its obligations under the Agreements and Seller Guide by, including, but not limited to, delivering repurchased loans to Defendant.

45.    Upon information and belief, Defendant is able to continue to perform under the Agreements and Seller Guide by, including but not limited to, repurchasing the Early Payment Default Loans.

46.    DBSP has suffered harm resulting from Defendant's refusal to repurchase the Early Payment Default Loans for which there is no adequate remedy at law.

47.    DBSP has demanded, and is entitled to, specific performance of Defendant's repurchase obligations under the Agreements and Seller Guide.

48.    As a result of the foregoing breaches, pursuant to the Agreements and Seller Guide, Defendant is obligated to pay DBSP an amount to be determined at trial, but which is not less than $12.56 million as of April 19, 2007, plus interest.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff DBSP respectfully requests judgment against Defendant awarding DBSP:

A.    Damages in an amount to be determined at trial but not less than $12.56 million;

B.    Specific performance of the Agreements and Seller Guide;

C.    Attorneys' fees and related costs, and all other costs, fees and expenses that DBSP has incurred, is incurring and will incur in this action in connection with Defendant's failure to observe and perform its obligations under the Agreements and Seller Guide; and

D.    Such other and further relief as the Court may deem just and proper.

8

Dated: New York, New York
      May 25, 2007

THACHER PROFFITT & WOOD LLP

By: _____

John P. Doherty (JD-3275)
Richard F. Hans (RH-0110)
Kerry Ford Cunningham (KF-1825)
Brendan E. Zahner (BZ-8645)
Two World Financial Center
New York, New York 10281
(212) 912-7400

*Attorneys for DB Structured Products, Inc.*

9

# EXHIBIT 1

# Seller Loan Purchase Agreement

THIS SELLER LOAN PURCHASE AGREEMENT ("*Agreement*") is made and entered into as of the 7TH day of DEC, 2005 by and between MINNESOTA MTG. ("*Seller*"), a(n) LLC duly organized under the laws of MN, having an address at 3600 MINNESOTA DR. # 600 EDINA, MN. 55435 and DB STRUCTURED PRODUCTS, INC. ("*DBSP*"), a corporation duly organized under the laws of the State of Delaware, the principal business address of which is 60 Wall Street, New York, New York 10005, for mutual considerations set forth herein.

**RECITALS:**

Seller engages in the business of making loans to individuals evidenced by promissory notes payable to Seller and secured by first or second mortgages on residential real property; and

Seller desires to sell to DBSP, and DBSP desires to purchase from Seller, from time to time, certain of those loans on the terms and conditions set forth here and in the Deutsche Bank Correspondent Lending Seller Guide, as amended supplemented or otherwise modified from time to time (the "*Seller Guide*").

NOW, THEREFORE, for and in consideration of the mutual covenants and agreements herein referenced or contained in the Seller Guide, and other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the parties hereto, intending to be legally bound thereby, agree as follows:

1. **SELLER GUIDE.** DBSP has provided to Seller the Seller Guide. SELLER ACKNOWLEDGES THAT IT HAS RECEIVED AND READ THE SELLER GUIDE PRIOR TO ENTERING INTO THIS AGREEMENT. Seller and DBSP agree to comply with and be bound by all terms of the Seller Guide, All of the terms and conditions of the Seller Guide are incorporated herein by reference and made a part of this Agreement.

2. **DEFINITIONS.** Capitalized terms in this Agreement not otherwise defined herein are defined in Volume I of the Seller Guide.

3. **PURCHASE AND SALE OF MORTGAGE LOANS.** Seller may from time to time offer Loans for sale to DBSP and DBSP may, from time to time, in its absolute discretion, purchase such Loans from Seller, on the terms and conditions set forth in the Seller Guide, in the applicable Commitment, and this Agreement.

4. **REPRESENTATIONS AND WARRANTIES.** Seller reaffirms that all of Seller's representations and warranties set forth in the Seller Guide, including without limitation those set forth in Volume I of the Seller Guide, are true and correct. Each of the Seller's representations and warranties: (a) applies to any and all Loans sold to DBSP; (b) shall be deemed to have been relied upon by DBSP regardless of any independent investigation now, heretofore, or hereafter made by DBSP, its officers, directors, employees or agents and regardless of any opportunity for such investigation or review; (c) is for the benefit of DBSP and each of its successors and assigns; (d) shall survive the termination of this Agreement and continue in full force and effect for so long as the Note remains outstanding and for such time as DBSP is subject to any risk of loss or liability as to any Loan purchased from Seller hereunder; and (e) is in addition to any other specific warranties contained elsewhere herein. Seller agrees that its representations and warranties and DBSP's right to indemnification and to repurchase or payment of Loss apply to all Loans purchased by DBSP hereunder notwithstanding that any Loan was originated by or through any third party originator, including, but not limited to, a mortgage broker or correspondent lender. Seller will not assert the fact that a Loan was originated by a third party originator as a defense to any claim or request by DBSP for indemnification or repurchase or payment of Loss.

5. **INDEMNIFICATION.** Seller hereby agrees that it will indemnify, defend and forever hold harmless DBSP, its affiliates and parent corporation, and its successors and assigns, and each of its and their respective officers, directors, employees and agents, from and against any and all liabilities, loss, injury or damages, including but not limited to incidental and consequential damages, judgments, damages, claims, demands, actions or proceedings, together with all reasonable costs and expenses relating thereto (including but not limited to legal and accounting fees and expenses), by whomsoever asserted, including but not limited to the claims of: (a) the Borrower with respect to any Loan purchased hereunder; and (b) any person or persons who prosecute or defend any actions or proceedings as representatives of or on behalf of any class or interest group, or any governmental instrumentality, body, agency,

department or commission, or any administrative body or agency having jurisdiction pursuant to any applicable statute, rule, regulation, order or decree; or the settlement or compromise of any of the foregoing, arising out of, resulting from or relating to: (i) any breach of any one or more of the representations, warranties, covenants, agreements or other obligations of Seller, irrespective of the ownership of Loans prior to the sale of Loans to DBSP hereunder and including, without limitation, any loss arising from Seller's failure to properly and timely file and record all Security Instruments in all necessary jurisdictions or (ii) any suit, claim, action, proceeding or investigation pending or threatened against DBSP or Seller or affecting any Loan asserting a claim based upon facts that, if proven, would constitute a breach of Seller's representations, warranties, covenants, agreements or obligations and regardless of whether the matter is ultimately successfully concluded.

6. **TERMINATION.** This Agreement may be terminated at any time by either DBSP or Seller by giving the other party hereto ninety (90) days prior written notice. In the event of Seller's breach of this Agreement, the Seller Guide or any other agreement between DBSP and Seller, or upon the occurrence of an Event of Seller Default as defined in Volume I of the Seller Guide, DBSP may immediately, upon notice to Seller via certified mail, terminate this Agreement. Upon the effective date of termination, neither of the parties shall have any further liabilities or obligations to the other party except that such termination shall not affect any liabilities and obligations of either party under sections 5, 7 and 9 or which otherwise relate to Loans transferred by Seller to DBSP prior to the effective date of termination.

7. **CONFIDENTIALITY.** The parties shall observe the confidentiality requirements set forth in Volume I of the Seller Guide. Without limiting the foregoing sentence, Seller shall agree to use the Confidential Information solely for the purpose of the Agreement, will not use the Confidential Information for any other purpose, and will not disclose or communicate the Confidential Information in any manner whatsoever, directly or indirectly, to any third party without the prior written consent of DBSP.

8. **RELATIONSHIP OF PARTIES.** Seller is not and shall not represent to third parties that it is acting as an agent for or on behalf of DBSP. Seller at all times shall act as an independent contractor.

9. **REPURCHASE** Seller agrees to repurchase any Loan subject to this Agreement in accordance with the terms and conditions set forth in Volume I of the Seller Guide.

10. **INTEGRATION.** This Agreement, including the Seller Guide and all other documents incorporated by reference herein, constitute the full and integrated agreement of the parties hereto with respect to the subject matter hereof and the transactions contemplated hereby, and supersedes any and all prior negotiations, understandings, agreements, statements (whether oral or written) and writings made with respect thereto.

11. **MODIFICATION.** Except for automatic amendments resulting from revisions by DBSP to the Seller Guide, this Agreement may not be amended, varied or altered, nor its provisions waived, except by written agreement of the parties hereto.

12. **ASSIGNMENT.** DBSP has entered into this Agreement with Seller in reliance on the specific qualifications of Seller; therefore, Seller may not assign or delegate this Agreement or any of its rights or obligations hereunder, whether by operation of law or otherwise, without prior written consent of DBSP.

13. **GOVERNING LAW.** This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York in effect at the time of execution hereof and applicable to agreements executed and performed in New York, without giving effect to the conflict of laws principles thereof. Any suit, action, or proceeding against Seller with respect to this Agreement may be brought in a court of competent jurisdiction in the County of New York, New York or in the United States District Court for the Southern District of New York, as DBSP in its sole discretion may elect, and Seller

-1-

[TPW: NYLIB1AL502772.3] 17988-00177 02/26/2004 1:09 PM

consents to the jurisdiction of such courts for the purpose of any such suit, action or proceeding.

14. BINDING EFFECT. This Agreement shall be binding upon and inure to the benefit of the parties hereto and each of their respective successors and permitted assigns.

15. CHANGE OF CIRCUMSTANCES. DBSP may refuse to purchase any Loan, notwithstanding that DBSP has issued a Commitment with respect to such Loan, if any regulatory agency having jurisdiction over DBSP has determined that such purchase would be unsafe or unsound.

16. SEVERABILITY. If any provision or part of this Agreement is deemed invalid or unenforceable under applicable law, the remainder of this Agreement shall not be affected thereby, and shall be fully enforceable to the extent of the valid portions thereof.

17. WAIVERS. All rights and remedies under this Agreement shall be cumulative and concurrent, and not in the alternative. No delay on the part of DBSP in exercising any right, power or remedy shall operate as a waiver thereof, nor shall any waiver of any right, power or remedy hereunder constitute a waiver of any other rights, powers or remedies hereunder. The acceptance by DBSP of any Loan which could have been rejected shall not constitute a waiver with respect to any other Loan, or with respect to any defect or default under that Loan which is not expressly waived in writing by DBSP.

18. NOT A COMMITMENT. Nothing contained herein shall be deemed or construed to be a commitment from DBSP to purchase any Loans from Seller, or a commitment from Seller to offer any Loans for sale to DBSP.

19. HEADINGS. All article and section headings in this Agreement are inserted for convenience of reference only; they neither form a part of this Agreement nor are to be used in the construction or interpretation hereof.

20. NOTICES. Except as otherwise provided herein, all notices, requests, demands or other communications which are to be given under this Agreement

shall be in writing, addressed to the appropriate party and sent via certified United States mail, return receipt requested, or by overnight delivery service to the address set forth in the introductory paragraph to this Agreement, unless another name or address is later substituted.

21. WAIVER OF JURY TRIAL. SELLER AND DBSP HEREBY AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. SELLER AND DBSP ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT FOR EACH SUCH PARTY TO ENTER INTO A BUSINESS RELATIONSHIP AND THAT SELLER AND DBSP HAVE ALREADY RELIED ON THE WAIVER IN THEIR RELATED FUTURE DEALINGS WITH EACH OTHER. SELLER AND DBSP FURTHER WARRANT AND REPRESENT THAT EACH HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, have executed this Agreement as of the day and year first above written.

SELLER: _Marissa Mfg. LLC._

By: _[signature]_
Signature

_Kevin A. White_
Typed Name

_Chief Mgr._
Title

DB STRUCTURED PRODUCTS, INC.

By: _[signature]_
Signature

MARGOTH PILLA
MANAGING DIRECTOR
Title

By: _[signature]_
Signature

MICHAEL SCHOFFELEN
AUTHORIZED SIGNATORY
Title

-2-

**Addendum to Seller Loan Purchase Agreement**
**DB-ASAP**

THIS ADDENDUM TO SELLER LOAN PURCHASE AGREEMENT ("Addendum") is made and entered as of the 9th day of DEC 2005 by and between _____ ("Seller"), with its principal place of business at _____ and DB Structured Products, Inc., a Delaware corporation, with its principal place of business at 60 Wall Street, New York, New York 10005 ("DBSP") and amends, supplements and is incorporated into the Seller Loan Purchase Agreement between DBSP and Seller dated as of DEC 9th, 2005 and any amendments thereto ("Seller Agreement"). Seller has been approved by DBSP for access to the Software Services System as defined herein and this Addendum sets forth the terms, conditions and consideration pursuant to which Seller, will obtain such access.

Based On The Mutual Covenants contained herein, the parties agree to the following terms:

### Article I - General Agreement Terms

**1.01 *Definitions.*** Unless specifically defined in this Addendum, the capitalized terms shall have the same meanings as in the Seller Agreement.

**"*Affiliate*"** - With respect to any specified individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof, any other entity controlling or controlled by or under common control with such specified entity. For the purposes of this definition, "control" when used with respect to any specified entity means the power to direct the management and policies of such entity, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise, and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

**"*Borrower Information*"** - All information related to Borrower provided or developed by Borrower, Seller or DBSP, regardless of whether DBSP's or Seller's relationship with the Borrower ceases, including any nonpublic personal information as defined by federal law, including, but not limited to, the Gramm-Leach-Bliley Act, as it may be amended, any regulations promulgated thereunder and any other customer information protected by applicable state law.

**"*Confidential Information*"** - All Systems Information and Loan Information. Confidential Information shall not include any information that: (a) enters the public domain other than as a result of disclosure by Seller; (b) with the exception of Borrower Information, is known by Seller at the time it is disclosed by DBSP, as shown by Seller's records. (c) with the exception of Borrower Information, is independently developed by Seller at anytime, as shown by Seller's records: or (d) is rightfully obtained by Seller from an independent third party who does not have an obligation of confidentiality to DBSP.

**"*Loan*"** — A mortgage-secured loan or line of credit to be funded by DBSP.

**"*Loan Information*"** - All written information provided by DBSP to Seller in connection with DBSP's loan programs, including policies, guidelines, credit criteria, business practices, plans or proposals, all information provided by DBSP to Seller regarding Borrower's transactions which are the subject of this Agreement and Borrower Information.

**"*Software*"** — The proprietary, copyrighted software product for Loan origination, including, but not limited to, LendTech 2000™ (LT2K™), and any enhancements, modifications, and upgrades thereon of a general nature provided in forms, whether in electronic or other format to which access is provided to Seller by DBSP under this Addendum for the sole purpose of submitting Loan applications to DBSP.

**"*Software Services System*"** - The computer software product for Loan origination, including, but not limited to, LendTech 2000™ (LT2K™), and the hardware, including ARC Systems™ hardware, on which it operates and any enhancements, modifications, and upgrades therein, including any product owned or licensed by any third party vendor which DBSP prior to and during the period services are being rendered by Seller to DBSP under the Seller Agreement.

**"*Systems Information*"** - Any and all information and materials regarding, relating to, or in connection with the Software, Software Services System and development, marketing, and production activities with respect thereto and all copies or information derived therefrom, including, but not limited to, the Systems Information of Arc Systems™. Systems Information includes, without limitation, trade secrets and know-how, and copyrighted, patented, trademarked, or otherwise protected proprietary information, as applicable, including such information owned or licensed by any third party vendor which contracts with DBSP. Systems Information includes, without limitation, any one or more of the following and the information contained therein: computer program manuals and instruction (of every form and contained on any storage or communication media); computer software (of every form and contained on any storage or communication media); operation sequence information; software related drawings and flow diagrams; software and process specifications; materials specifications; performance specifications; test data; written or otherwise recorded technical assistance any other data generally known as engineering and operations information; technical information; sales and promotion information; customer engineering; product design and technology including mathematical equations, physical experiments and computer program set up procedures; operations engineering designs; operations planning and controlling; Internet or other interfaces with service provider or its services: installation, initialization and start up running procedures; System design documents and drawings; business practices; financial data; maintenance and trouble shooting information; DBSP's lending criteria and loan terms resident on the Software; know how; business plans; information marked "Confidential " by DBSP; service provider lists, and identification numbers and passwords, including, but not limited to, the master password.

**1.02 *Entire Agreement*.** This Addendum contains the final and entire agreement of the parties with respect to the subject matter thereof and all other agreements whether oral or written made with respect to the subject and the transactions contemplated by this Addendum shall have no force or effect. No amendments, supplements or waivers of any provision of this Addendum shall be valid unless by an instrument in writing, signed by authorized representatives of both parties. Except as expressly provided herein, the terms and provisions of the Seller Agreement shall remain in full force and effect. To the extent of any inconsistency between this Addendum and the Seller Agreement, this Addendum shall govern.

### Article II — Requirements for Seller's Access to the Software Services System

**2.01 *Access to Software Services System; Training; Fees.***
**(a)** DBSP has approved the Seller for access to the Software Services System. Provided Seller is not in default of any material provisions, conditions or covenants contained in the Seller Agreement or this Addendum, DBSP hereby grants Seller access to the Software for the sole purpose of enabling Seller to submit applications and prequalification inquiries for Loans to DBSP and as governed by this Addendum. DBSP shall make available to Seller such training as is required to access the Software Services System and the Software at the then published training and consulting rates, if any.

**(b)** Seller shall pay to DBSP fees for use of the Software Services System in accordance with DBSP's fee schedule in effect from time to time. In addition, Seller shall be required to pay the cost of any credit reports obtained from a consumer reporting agency in connection with Seller's use of the Software Services System. DBSP

-1-

will invoice Seller for said fees and costs on a monthly basis. Payment will be due within thirty (30) days of each invoice date.

**2.02    Seller's Agreements**

(a) Seller will access and use the Software Services System solely for the purpose of this Addendum and the Seller Agreement and will not use or permit the access or use of the Software Services System by any of its directors, officers, employees, affiliates, agents, advisors or representatives for any other purpose.

(b) Seller is authorized by Borrower to submit each Loan application and prequalification inquiry.

(c) No copies of screens, manuals, Software, passwords or any proprietary or Confidential Information shall be made available by Seller to any prospective affiliates or other third parties, even under a signed confidential disclosure agreement for any reason without the express written permission of DBSP relative to that particular prospective affiliate or third party.

(d) Due to the extremely sensitive nature of Borrower Information provided by Seller, Seller shall verify all data inputted into the Software and shall be obligated to maintain the security of all Borrower Information. Seller is solely responsible for assuring security measures and confidentiality relating to the use of its terminals and the terminals of its affiliates and thereby assure the confidentiality of Borrower Information in accordance with the Gramm-Leach-Bliley Act, as it may be amended, and any regulations promulgated thereunder. Access to the Software Services System from the Seller's location shall be available only through the use of identification numbers and passwords, including the master password assigned and validated by DBSP prior to commencement of Seller's use of the Software Services System. Once such identification numbers, passwords and master password have been assigned by DBSP, the use and confidentiality of such Numbers and passwords shall be the sole responsibility of Seller. DBSP may change the identification numbers, passwords and master password at any time, in its sole discretion. Seller can request a change to the identification numbers, passwords and master password provided that Seller's sole owner or a Partner, President or Vice President of Seller with appropriate authority requests such change in writing.

(e) Seller shall be responsible for inputting all data into the Software Services System and verifying the accuracy of all data and for verifying correct entry of data entered by Seller. In addition, Seller agrees to provide, in a reasonable time and in such format as may be reasonably requested by DBSP, all other data or information required by DBSP to enable the Software Services System to function for its intended purpose, including credit bureau subscriber member codes to set up direct credit report billing. DBSP shall not be responsible for errors in data, data entry or other services, programs, hardware, data files, or output provided to, or maintained for, Seller.

(f) Seller shall be responsible for the safety and condition of any terminal equipment provided by DBSP to Seller, and shall have full responsibility for establishing and maintaining the telephone communication lines and equipment necessary to transmit data between the Seller and the Software Services System. Seller shall be solely responsible for purchase or lease, installation, maintenance, and performance of its system which includes its software and equipment necessary to render, within reasonable business standards, data processing services specified in this Addendum to Seller via Internet access.

(g) Seller agrees that no appraisal or title company controlling, controlled by, or under common control with Seller shall be used in connection with the closing of any Loan.

**2.03    Proprietary Rights.** Seller acknowledges that it shall obtain no proprietary rights in the hardware, software, specifications, storage media, or documentation used or made available to Seller under this Addendum, whether those materials are developed or purchased specifically for performance of this Addendum or otherwise. Seller hereby assigns all intellectual property rights if any that may be developed by any third party vendor which contracts with DBSP or jointly by any third party vendor, DBSP and Seller in the course of performing this Addendum. Seller acknowledges that

those programs, specifications, and documentation are not the property of Seller and agrees to keep them confidential and not to disclose or divulge them to any third party. Seller agrees to keep any property supplied to Seller under this Addendum free and clear of all claims, liens, and encumbrances. The provisions of this paragraph shall survive the termination of the Agreement. In the event that Seller breaches or attempts to breach any of the provisions of this Section 2.03, the parties agree that this will cause irreparable damage to DBSP, and accordingly, Seller agrees that DBSP or its assignee shall be entitled as a matter of right to an injunction out of any court of competent jurisdiction restraining any breach or attempted breach of this Addendum. DBSP or its assignee shall have the right, in addition to any other remedies that may be available to it, to injunctive relief enjoining the breach or attempt to breach. For this purpose, it is expressly acknowledged by the parties that legal remedies alone are inadequate.

**2.04    Confidentiality**

(a) All Confidential Information shall be held in the strictest confidence and will not be disclosed by the Seller or its directors, officers, employees, affiliates, agents, advisors or representatives (collectively, the "Representatives"), except as specifically permitted by the terms hereof. Seller and its Representatives will use the Confidential Information solely for the purpose of the Addendum, will not use the Confidential Information for any other purpose, and will not disclose or communicate the Confidential Information in any manner whatsoever, directly or indirectly, to any third party without the prior written consent of DBSP, unless disclosure is permitted under Section 2.04(c). Seller further agrees that the Confidential Information will be disclosed only in such of its Representatives who need to examine the Confidential Information for the purposes described in this Section 2.04. Seller shall in any event be responsible for any breach of this Agreement by any Representative.

(b) All Confidential Information shall remain the exclusive property of DBSP. Upon request by DBSP, Seller shall promptly surrender to them any of the Confidential Information in the Seller's possession, and shall surrender all Confidential Information to DBSP promptly and without request upon termination of the Agreement. Seller will not retain any copies of the Confidential Information, subject, however, to any requirement under applicable law that Seller retain copies of Borrower Information.

(c) Borrower Information shall be held in strictest confidence by Seller and used only for the purposes authorized by the Borrower's relationship with the Seller; provided, however that: (i) until DBSP has approved the Loan and the Borrower has accepted the offer of credit, Seller can disclose Borrower Information to third parties as permitted by Borrower; and (ii) Seller may disclose Borrower Information relating to a Loan if requested or required by Seller's regulatory authority.

**2.05    Assignment.** Seller may not assign, sublicense or delegate, whether by operation of law or otherwise, this Addendum and the rights and obligations thereunder, without prior written consent of DBSP which consent may be withheld in DBSP's sole and arbitrary discretion and subject to the requirement that Seller enter into a written contract that limits any such person's use and disclosure of the Confidential Information, including any Borrower Information, as defined in Section 1.01 of this Addendum. DBSP may assign its rights and benefits and delegate its duties and obligations to its Affiliates.

**2.06    Disclaimer of Warranty.** DBSP warrants that it is authorized to permit Seller to access the Software Services System and the Software, and that Seller's access to and use of the Software Services System will not infringe the copyright or intellectual property rights of any third party whose consent to such use has not been obtained by DBSP. THE FOREGOING WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. DBSP MAKES NO WARRANTY,

-2-

EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO THE SOFTWARE SERVICES SYSTEM OR THE SOFTWARE. DBSP SHALL NOT BE OTHERWISE RESPONSIBLE (IN WHOLE OR IN PART) FOR LOST, DAMAGED, OR DESTROYED PROGRAMS, DATA, DATA FILES, BACK-UP DATA, STORAGE MEDIA OR OUTPUT, OR FOR ANY COSTS, EXPENSES OR DAMAGES INCURRED OR SUSTAINED IN THAT REGARD, INCLUDING WITHOUT LIMITATION BUSINESS INTERRUPTION, DAMAGES. EXCEPT FOR DBSP'S OBLIGATION TO INDEMNIFY SELLER UNDER SECTION 2.07(b), UNDER NO CIRCUMSTANCES SHALL DBSP BE LIABLE FOR ANY INDIRECT, INCIDENTAL, PUNITIVE, EXEMPLARY, SPECIAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND WHATSOEVER SUSTAINED BY SELLER, OR FOR ANY CLAIM MADE AGAINST SELLER BY ANY OTHER PARTY EVEN IF DBSP HAS BEEN ADVISED OF THE CLAIM OR POTENTIAL CLAIM. THESE EXCLUSIONS SHALL APPLY REGARDLESS OF THE FORM OF ACTION, WHETHER IN COURT OR ARBITRATION, CONTRACT OR TORT, INCLUDING MISREPRESENTATION, NEGLIGENCE, AND GROSS NEGLIGENCE.

**2.07** *Indemnification*

(a) Seller shall indemnify, defend and hold harmless DBSP, its Affiliates and parent corporation, and their respective directors, officers, agents, and employees, successors and/or assigns, from and against any and against all damage, loss, liability, cost, actions, causes of action, claims, demands or expense both direct and indirect (including without limitation reasonable legal and accounting fees and expenses actually incurred) by whomsoever asserted, including but not limited to the claims of any third party vendor which may arise or be incurred as a result of Seller's access to or use of the Software Services System, or any action or inaction by Seller under this Addendum, including, but not limited to, a breach of any covenant, condition, representation or warranty arising under this Addendum, except as such damage, loss, liability, cost, action, cause of action, claim, demand or expense is caused solely by the negligence or willful misconduct of DBSP.

(b) DBSP shall indemnify, defend and hold harmless Seller, its affiliates and parent corporation, and their respective directors, officers, agents, and employees, successors and/or assigns, from and against any and against all damage, loss, liability, cost, actions, causes of action, claims, demands or expense both direct and indirect (including without limitation reasonable legal and accounting fees and expenses) by whomsoever asserted, which may arise or be incurred as a result of a claim by a party that the Software Services System used within the scope of this Addendum infringes any copyright or intellectual property right of any third person, subject to the limitation of liability included in Section 2.06, and provided further that Seller notifies DBSP promptly of the claim, actual or threatened, and DBSP may participate fully at its expense in the defense of the claim.

*Article III - Termination of Addendum*

**3.01** *Termination*

(a) Upon the occurrence of an "*Event of Default*" as defined in this Section, without prejudicing any right or remedy it may have against Seller or otherwise in the sole discretion of DBSP, DBSP may terminate this Addendum and Seller's permission to use the Software Services System effective on Seller's receipt of written notice of termination from DBSP to Seller.

(b) The occurrence of any of the following shall constitute an *Event of Default*: (i) Seller shall fail or omit to perform or observe any obligation under this Addendum made by Seller, provided that if, in DBSP's judgment, the failure or omission is capable of being cured, the failure or omission shall not have been fully corrected within 30 days after the giving of written notice to Seller that it is to be remedied; or (ii) upon termination of the Seller Agreement.

**3.02** *Survival*

The rights and obligations of the parties under this Addendum which by their nature survive the termination or completion of the Seller Agreement, including but not limited to the following, shall remain in full force: Entire Agreement; Seller's Access to the Software Services System; Proprietary Rights; Confidentiality; Assignment; Disclaimer of Warranty; and Indemnification.

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, have executed this Addendum as of the day and year first above written.

SELLER: _MARIBECCA MFG. LLC._

By: _____
Signature

_KEITH A. WHITE_
Typed Name

_MGR_
Title

DB STRUCTURED PRODUCTS, INC.

By: _____
Signature
**MARGOTH PILLA**
**MANAGING DIRECTOR**
Typed Name
Title

By: _Michael Schoffelen_
Signature
**MICHAEL SCHOFFELEN**
**AUTHORIZED SIGNATORY**
Typed Name
Title

DEC 12 2005 17:34 FR                                TO 917324607159    P.06

DEC 07 2005 04:52 FR

### Amendment to Seller Loan Purchase Agreement

THIS AMENDMENT TO SELLER LOAN PURCHASE AGREEMENT ("Amendment") is made and entered as of the 9ᵗᴴ day of DEC_____, 2005 by and between _MINIBUCA Mfg. LLC_ ("Seller"), and DB Structured Products, Inc. ("DBSP"), and amends, supplements and is incorporated into the Seller Loan Purchase Agreement between DBSP and Seller dated as of _December 9_ 2005 and any amendments thereto (the "Seller Agreement").

Based on the mutual covenants contained herein, the parties agree as follows:

I.    **SELLER GUIDE.**  Section 1 of the Seller Agreement is amended in its entirety to read as follows:

1.  SELLER GUIDE.

(a) DBSP has provided to Seller the Seller Guide. SELLER ACKNOWLEDGES THAT IT HAS RECEIVED AND READ THE SELLER GUIDE PRIOR TO ENTERING INTO THIS AGREEMENT. Seller and DBSP agree to comply with and be bound by all terms of the Seller Guide. All of the terms and conditions of the Seller Guide are incorporated herein by reference and made a part of the Agreement, with the exception of the following:

(i)  Volume 1 of the Seller Guide, page 28, section titled "Early Delinquency Repurchase" is amended in its entirety to read as follows:

The Seller is required to repurchase, at the sole discretion of DB Structured Products, Inc., any Loan DB Structured Products, Inc. purchased from the Seller if any of the first two (2) payments due after the Purchase Date are thirty (30) days delinquent.

(ii) Volume 1 of the Seller Guide, page 31, section titled "Early Payoff Policy" is amended in its entirety to read as follows:

For Loans without a prepayment penalty, if the Borrower fully pays off a Loan within the first 6 months following DB Structured Products, Inc.'s Purchase Date, the Seller must reimburse DB Structure Products, Inc. for any premium paid above par within thirty (30) days of such payoff. For Loans with a prepayment penalty, any premium above par in excess of the prepayment penalty must be reimbursed to DB Structured Products, Inc. within thirty (30) days of such payoff.

(b) The Seller Guide may be amended or supplemented from time to time by DBSP in the manner provided in the Seller Guide; provided, however, that changes to the Seller Guide that would amend, vary or alter section 1(a) above shall not be binding upon Seller except with the written agreement of the Seller.

II.    **RATIFICATION.**  Seller and DBSP ratify and confirm the terms and provisions of the Seller Agreement and the Seller Guide, which terms shall remain in full force and effect except as amended and/or supplemented herein. To the extent of any inconsistency between this Amendment and the Seller Agreement, the terms of this Amendment shall prevail.

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, have executed this Amendment as of the day and year first above written.

|  | DB STRUCTURED PRODUCTS, INC. |
|---|---|
| By: _[signature]_<br>Name: _Keith A. White_<br>Title: _Chief Mgr._ | By: _[signature]_<br>Name: MARGOTH P.<br>Title: MANAGING DIREC<br><br>By: _[signature]_ Michael Schoffelen<br>Name: MICHAEL SCHOFFELEN<br>Title: AUTHORIZED SIGNATORY |

[TPW: NYLEGAL:323931.2] 1798K-00177 04/12/2005 10.23 AM

# EXHIBIT 2

# EXHIBIT 3

# Thacher Proffitt

Thacher Proffitt & Wood LLP
Two World Financial Center
New York, NY 10281
212.912.7400

Fax: 212.912.7751
www.tpw.com

April 26, 2007

<u>By Federal Express and Certified Mail – Return Receipt Requested</u>

Mr. Keith A. White
Maribella Mortgage, LLC
3600 Minnesota Drive, Suite 650
Edina, Minnesota 55435

Re:    Seller Loan Purchase Agreement dated as of December 9, 2005, as
       amended, between DB Structured Products, Inc. and Maribella
       <u>Mortgage, LLC ("Maribella")</u>

Dear Mr. White:

Our firm has been retained as litigation counsel by DB Structured Products, Inc. ("DBSP") in connection with the Seller Loan Purchase Agreement dated as of December 9, 2005, as amended ("Agreement") between DBSP and Maribella, and in connection with certain letter agreements between DBSP and Maribella (the "Commitment Letters", and together with the Agreement, the "Agreements"). Capitalized terms used herein and not defined have the meanings set forth in the Agreements.

DBSP hereby demands immediate payment of the amount of $12,569,738.18 (the "Repurchase Price") which is due and owing to DBSP by Maribella in connection with Maribella's obligation to repurchase the mortgage loans listed on Exhibit A attached hereto (the "Mortgage Loans") pursuant to the Agreements. The Mortgage Loans are in early payment default, as specifically set forth in the Commitment Letters.

Please remit the Repurchase Price by wire transfer to the following bank account no later than May 10, 2007:

| | |
|---|---|
| Bank: | Bank of New York |
| ABA: | 021000018 |
| Acct. #: | GLA/111569 |
| Acct. Name: | DPX |
| Attn.: | Ken Glover |
| Re: | Maribella Repurchase |

Mr. Keith A. White                                                              Page 2.
April 26, 2007

 If you fail to remit the Repurchase Price by that date, please be advised that DBSP will commence formal legal action against Maribella to recover the amounts owed without further notice.

 Nothing contained in this letter shall constitute a waiver of any of DBSP's rights or remedies under the Agreements, at law or in equity. Nor shall this letter be construed as a waiver of any Event of Default by Maribella under the Agreements.

 Please call me or Steven Paolini, Esq., Vice President and Counsel, Deutsche Bank AG, at (212) 250-0382 should you have any questions or wish to discuss this matter.

Very truly yours,

John P. Doherty

cc: Steven Paolini, Esq.

Encl.

# EXHIBIT  B

DOCKETED

B 151— Affidavit of Service of Summons or Subpoena: Personal or Alternative
Methods: Corp. or Ind.: Military Service, 10 pt. type, 1-95

© 1988 JULIUS BLUMBERG, INC.
PUBLISHER, NYC 10013

**COURT**   UNITED STATES DISTRICT COURT
COUNTY OF           SOUTHERN DISTRICT OF NEW YORK

DB STRUCTURED PRODUCTS, INC.

Index No. 07 CV 41 20

*Plaintiff(s)*

**AFFIDAVIT OF
SERVICE OF SUMMONS
(AND COMPLAINT)**

*against*

MARIBELLA MORTGAGE, LLC

SEE ATTACHED RIDER

*Defendant(s)*

STATE OF ~~NEW YORK~~ MINNESOTA, COUNTY OF HENNEPIN      SS: The undersigned, being duly sworn, deposes and says; deponent is not a
party herein, is over 18 years of age and resides ~~X~~ IN THE STATE OF MINNESOTA
That on   6/5/07          at 11:30AM, at  3600 MINNESOTA DRIVE #160, EDINA, MN 55435
deponent served the within summons, *and complaint on*      MARIBELLA MORTGAGE, LLC          defendant therein named,
SEE ATTACHED RIDER                 BY SERVING REGISTERED AGENT
                                    KEITH WHITE

INDIVIDUAL
1. ☒   by delivering a true copy *of each* to said defendant personally; deponent knew the person so served to be the person described as
said defendant therein.

CORPORATION
2. ☐   a                          corporation, by delivering thereat a true copy *of each* to
personally, deponent knew said corporation so served to be the corporation described in said summons as said defendant and
knew said individual to be                               thereof.

SUITABLE AGE PERSON
3. ☐   by delivering thereat a true copy *of each* to                          a person of suitable age
and discretion. Said premises is defendant's—actual place of business—dwelling place—usual place of abode—within the state.

AFFIXING TO DOOR, ETC.
4. ☐   by affixing a true copy *of each* to the door of said premises, which is defendant's—actual place of business—dwelling place—
usual place of abode—within the state. Deponent was unable, with due diligence to find defendant or a person of suitable age
and discretion thereat, having called there

MAILING TO
RESIDENCE
USE WITH 3 OR 4
5A. ☐   Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a postpaid envelope properly addressed to
defendant at defendant's last known residence, at                                    and deposited
said envelope in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State.

MAILING TO
BUSINESS
USE WITH 3 OR 4
5B. ☐   Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a first class post paid envelope properly
addressed to defendant at defendant's actual place of business, at
in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bore
the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the
communication was from an attorney or concerned an action against the defendant.

DESCRIPTION
USE WITH
1, 2, OR 3
☒

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ Male | ☒ White Skin | ☐ Black Hair | ☐ White Hair | ☐ 14-20 Yrs. | ☐ Under 5' | ☐ Under 100 Lbs. |
| ☐ Female | ☐ Black Skin | ☒ Brown Hair | ☐ Balding | ☐ 21-35 Yrs. | ☐ 5'0"-5'3" | ☐ 100-130 Lbs. |
| | ☐ Yellow Skin | ☐ Blonde Hair | ☐ Mustache | ☐ 36-50 Yrs. | ☐ 5'4"-5'8" | ☐ 131-160 Lbs. |
| | ☐ Brown Skin | ☐ Gray Hair | ☐ Beard | ☒ 51-65 Yrs. | ☒ 5'9"-6'0" | ☒ 161-200 Lbs. |
| | ☐ Red Skin | ☐ Red Hair | ☐ Glasses | ☐ Over 65 Yrs. | ☐ Over 6' | ☐ Over 200 Lbs. |

Other identifying features:

USE IN
NYC CIVIL CT.
☐   The words "CONSUMER CREDIT TRANSACTION" were prominently displayed at the top of the summons(es) and the additional
legend was printed in not less than 12 point bold upper case type on the summons(es) pursuant to 22 NYCRR §208.6(d) and (f).

MILITARY
SERVICE
☐   I asked the person spoken to whether recipient was in active military service of the United States or of the State of New York in any
capacity whatever and received a negative reply. Recipient *wore ordinary civilian clothes and no military uniform.* The source of
my information and the grounds of my belief are the conversations and observations above narrated. Upon information and
belief I aver that the recipient is not in military service of New York State or of the United States as that term is defined in either
the State or in the Federal statutes.

Sworn to before me on
JUNE / 9th, 2007

*Rose Batsell*

ROSE BATSELL
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2010

PRINT NAME BENEATH SIGNATURE
Bob Yates

License No.

INSTRUCTIONS: Check appropriate boxes and fill in blanks. Delete inappropriate italicized language and military service allegation if not applicable.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X    Case No. 07 CV 4120

DB STRUCTURED PRODUCTS, INC.

                                      Plaintiff,    **RIDER TO**
                        vs.    **AFFIDAVIT OF**
                                              **SERVICE**

MARIBELLA MORTGAGE, LLC

                                  Defendants.

------------------------------------------------------------X

List Of Documents Served:

- Summons In A Civil Case

- Complaint With Exhibits 1-3

- Explanation Of Relatedness

- Statement Pursuant To Rule 7.1 Of The Federal Rules Of Civil Procedure

- Civil Cover Sheet

- Individual Practices In Civil Cases Denise Cote, United States District Judge

- Individual Rules Of Practice Of Judge Kevin Nathaniel Fox

- Procedures For Electronic Case Filing

- Guidelines For Electronic Case Filing

- 3rd Amended Instructions For Filing An Electronic Case Or Appeal

AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

SOUTHERN _____ DISTRICT OF _____ NEW YORK

DB STRUCTURED PRODUCTS, INC.

## V.

MARIBELLA MORTGAGE, LLC

### SUMMONS IN A CIVIL CASE

CASE NUMBER:

## 07 CV 4120

TO: (Name and address of defendant)

MARIBELLA MORTGAGE, LLC
3600 Minnesota Drive, Suite 650
Edina, MN 55435-7926

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

THACHER PROFFITT & WOOD LLP
Richard F. Hans (RH-0110)
John P. Doherty (JD-3275)

Two World Financial Center
New York, New York 10281
(212) 912-7400

an answer to the complaint which is herewith served upon you, within _____ TWENTY _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

CLERK

_____

(BY) DEPUTY CLERK

MAY 2 5 2007

_____

DATE

AO 440 (Rev. 10/93) Summons in a Civil Action -SDNY WEB 4/99

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and Complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and
discretion then residing therein.
Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

☐ Other *(specify)*: _____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing
information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
Date                                         Signature of Server

_____
Address of Server

---

(1)    As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

**Service of Process:**
1:07-cv-04120-DLC DB Structured Products, Inc. v. Maribella Mortgage, LLC
ECF, RELATED

**U.S. District Court**

**United States District Court for the Southern District of New York**

**Notice of Electronic Filing**

The following transaction was entered by Zahner, Brendan on 6/27/2007 at 12:03 PM EDT and filed on 6/27/2007
**Case Name:**        DB Structured Products, Inc. v. Maribella Mortgage, LLC
**Case Number:**      1:07-cv-4120
**Filer:**            DB Structured Products, Inc.
**Document Number:** 6

**Docket Text:**
SUMMONS RETURNED EXECUTED Summons and Complaint served. Maribella Mortgage, LLC served on 6/5/2007, answer due 6/25/2007. Service was accepted by Keith White. Document filed by DB Structured Products, Inc.. (Zahner, Brendan)


**1:07-cv-4120 Notice has been electronically mailed to:**

John Patrick Doherty      jdoherty@tpw.com

Richard Francis Hans , Jr    rhans@tpw.com

Brendan Ernest Zahner      bzahner@tpw.com, mmuller@tpw.com

**1:07-cv-4120 Notice has been delivered by other means to:**

Kerry Ford Cunningham
Thacher Proffitt & Wood, LLP
Two World Financial Center
New York, NY 10281

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1008691343 [Date=6/27/2007] [FileNumber=3522013-0
] [6f6ca0e534fe2d8b3a5c72531b45bd2dd6c38df524adf205f1d6fc22abd2dec049e
4c2c9f523cf5c1c9bcedac46a0929283ff924644024276b7ffaeca11d9302]]

# EXHIBIT   C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DB STRUCTURED PRODUCTS, INC.

          Plaintiff,

      -against-

MARIBELLA MORTGAGE, LLC

          Defendant.

**ECF CASE**

**07 Civ. 4120 (DLC)**

**CLERK'S CERTIFICATE**

I., J. MICHAEL MCMAHON, Clerk of the United States District Court for the Southern District of New York, do hereby certify that this action commenced on May 25, 2007 with the filing of a Complaint; a copy of the Summons and Complaint was served on Defendant Maribella Mortgage, LLC on June 5, 2007 by serving Defendant's registered agent, Keith White, 3600 Minnesota Drive #160, Edina, MN 55435; and proof of such service was filed on June 27, 2007.

I further certify that the docket entries indicate that the Defendant has not filed an answer or otherwise moved with respect to the Complaint herein. The default of the Defendant is hereby noted.

Dated: New York, New York

       Sept 19 2007

                           **J. MICHAEL MCMAHON**
                              Clerk of the Court

                By: _____
                        Deputy Clerk

# EXHIBIT  D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DB STRUCTURED PRODUCTS, INC.

Plaintiff,

-against-

MARIBELLA MORTGAGE, LLC

Defendant.

**ECF CASE**

**07 Civ. 4120 (DLC)**

**STATEMENT OF DAMAGES**

Principal amount sued for ...........................................................................$12,569,738.18

Interest at $2,852.49 per diem from 04/19/07 through 10/12/07 (177 days).....$504,890.73

Attorneys' fees and costs ..................................................................................$17,222.70

Total (as of September 20, 2007)................................................................$13,091,851.61

# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DB STRUCTURED PRODUCTS, INC.

                Plaintiff,

     -against-

MARIBELLA MORTGAGE, LLC,

                Defendant.

**ECF CASE**

**07 Civ. 4120 (DLC)**

**AFFIDAVIT OF JOHN P. DOHERTY
WITH RESPECT TO ATTORNEYS'
FEES AND COSTS**

STATE OF NEW YORK    )
                       ) ss.:
COUNTY OF NEW YORK  )

      JOHN P. DOHERTY, being duly sworn, deposes and says:

          1.     I am a member of Thacher Proffitt & Wood LLP ("TPW"), counsel for plaintiff DB Structured Products, Inc. ("DBSP"). I have never been the subject of a disciplinary proceeding or received any professional censure in connection with the practice of law. Unless otherwise noted, I have personal knowledge of the facts set forth herein based on my personal involvement in this lawsuit or based on TPW's books and records.

          2.     I was admitted to the bar of the State of New York and the United States District Court for the Southern District of New York in 1997.

          3.     TPW is a full-service commercial and financial services law firm. I am a business litigator and represent clients in commercial litigation matters, including loan-related litigation and workouts.

4.    TPW has served as counsel to DBSP in this matter since March 2007. In that capacity, TPW provides advice and counsel concerning, and assists in enforcing, DBSP's rights relating to certain agreements between DBSP and Defendant, as described in the Complaint.

5.    I submit this affidavit in support of DBSP's application for attorneys' fees in this matter.

6.    I am the TPW partner who is principally responsible for this matter. I have personal knowledge of the legal fees and the costs incurred by DBSP in this litigation.

7.    As a partner at TPW, I have direct access to TPW's attorney time-keeping system.

8.    Attached hereto are the invoices detailing the legal fees and expenses associated with this litigation. In no fashion should this affidavit be construed as a waiver of the attorney client privilege or the protections afforded by the work-product doctrine.

9.    The billing rates of TPW attorneys and paraprofessionals are located on a summary page at the end of each invoice.

10.    These fees were billed in accordance with TPW's billing rates and procedures. The rates charged by TPW for the services rendered by its professionals and paraprofessionals are the same or lower rates than TPW charges for professional and paraprofessional services rendered in comparable matters, because DBSP generally received a discounted fee.

11.    The fees requested by TPW are reasonable based on the customary compensation charged by comparably skilled practitioners in similar matters in a competitive national legal market.

2

12.    TPW's billing records are generated by individuals with a professional and business responsibility to make and to keep them accurately, and it is, therefore, reasonable and appropriate to rely upon them for information as to the actual and total legal fees and expenses incurred by or on behalf of DBSP in enforcing its rights in this case.

13.    Disbursements include, but are not limited to: court fees, photocopying charges, telephone charges, mailing charges and ground transportation. A detailed schedule of such expenses -- which shows only the disbursements for which reimbursement is sought herein -- is included in each monthly invoice.

14.    As more fully described in the attached invoices, the fees and expenses incurred by TPW on DBSP's behalf for this matter, through and including August 31, 2007, are $17,222.70. Specifically, attached are (i) Invoice #54899 (for the period through and including May 31, 2007) in the amount of $8,050.18, (ii) Invoice #57605 (for the period June 1, 2007 through and including June 30, 2007) in the amount of $846.94, Invoice #58885 (for the period July 1, 2007 through and including July 31, 2007) in the amount of $1,576.14, and the final invoice (for the period August 1, 2007 through and including August 31, 2007) in the amount of $6,749.44. DBSP reserves the right to supplement this application for attorneys' fees.

_____
JOHN P. DOHERTY

Sworn to before me this
20th day of September 2007

_____
Notary Public

JONATHAN E. WILSON
Notary Public, State of New York
No. 01WI6091214
Qualified in Bronx County
Certificate Filed in New York County
Commission Expires April 28, 2011

3



## Thacher Proffitt
Thacher Proffitt & Wood LLP

Deutsche Bank Securities, Inc.
60 Wall Street
New York, NY 10005

Attn:  Jay Strauss Esq.

PLEASE REMIT PAYMENT BY WIRE TO:

Citibank, N.A.
(ABA No. 021000089)
For the Account of:
Thacher Proffitt & Wood LLP
Account No. 37562867
Reference: RFH 17988-00617

Invoice Number **DRAFT**

September 17, 2007

FEDERAL ID NO. 13-5612353

FOR PROFESSIONAL SERVICES rendered and

disbursements posted through August 31, 2007 with respect to

Maribella Mortgage, LLC, our services including:

| Date | Services | Atty. | Hours |
|------|----------|-------|-------|
| 07/23/07 | Prepare for conference; status. | JPD | 0.2 |
| 07/24/07 | Discovery issues. | JPD | 0.1 |
| 08/01/07 | Work on/ revise default papers. | CAL | 0.1 |
| 08/02/07 | Emails with DBSP. | JPD | 0.1 |
| 08/03/07 | Prepare for and attend conference before Judge Cote; prepare for same; outline report to client; email with DBSP. | JPD | 0.4 |
| 08/06/07 | Draft and revise status email; research members of LLC. | BEZ | 1.4 |
| 08/06/07 | Work regarding LLC membership; emails with Mr. Shoffelen. | JPD | 0.5 |
| 08/06/07 | Research with regard to diversity jurisdiction of an LLC; office conference with BEZ and JPD regarding same. | MHM | 0.3 |
| 08/07/07 | Research members of LLC; draft letter to Judge Cote regarding same | BEZ | 1.6 |
| 08/07/07 | Work on Maribella default matters. | CAL | 0.3 |
| 08/07/07 | Work on LLC issue; letter to Judge Cote. | JPD | 0.3 |
| 08/07/07 | Research regarding entity State information for BEZ. | LD | 0.7 |
| 08/08/07 | Research regarding LLC members; draft letter regarding same. | BEZ | 1.1 |
| 08/08/07 | Research regarding entity State information for BEZ. | LD | 0.7 |

| Date | Description | Initials | Hours | |
|---|---|---|---|---|
| 08/09/07 | Research LLC members, telephone calls to Mr. Duncan, incorporator of Maribella, regarding same. | BEZ | 1.1 | |
| 08/09/07 | Letter to Judge Cote; Rule 26 and discovery issues. | JPD | 0.8 | |
| 08/10/07 | Research regarding LLC members; draft letter regarding same; telephone call with JPD and KFC regarding tasks. | BEZ | 1.3 | |
| 08/10/07 | Delivered by hand for Judge Cote to SDNY. | JEW | 0.4 | |
| 08/10/07 | Letter to Judge Cote; Rule 26 and discovery issues. | JPD | 0.8 | |
| 08/13/07 | Determination of LLC/diversity status. | JPD | 0.1 | |
| 08/13/07 | Meeting with JPD, BEZ, MHM, LJG, CAL and JTH re: determination of LLC/diversity status | KFC | 0.1 | |
| 08/13/07 | Update status chart; determination of LLC / diversity status. | MHM | 0.2 | |
| 08/14/07 | Draft and revise subpoena upon Mr. Duncan, Maribella's incorporator; draft letter to Judge Cote regarding LLC members. | BEZ | 2.1 | |
| 08/14/07 | Delivered by hand for Judge Cote to SDNY. | JEW | 0.4 | |
| 08/14/07 | Letter to Judge Cote. | JPD | 0.3 | |
| 08/16/07 | Emails with Mr. Duncan regarding LLC members; email team regarding same; receive and review letter form Mr. Duncan regarding same. | BEZ | 1.2 | |
| 08/16/07 | Work on LLC issue. | JPD | 0.2 | |
| 08/16/07 | Conference with BEZ and MHM re: discovery, default motions and other matters. | KFC | 0.1 | |
| 08/16/07 | Update status chart; meeting with KFC and BEZ; phone call with KFC; review emails with regard to LLC status. | MHM | 0.3 | |
| 08/20/07 | LLC issue; meet with MHM. | JPD | 0.2 | |
| 08/20/07 | Draft letter to Judge Cote regarding Maribella's status as LLC; research with regard to same; emails with team regarding same. | MHM | 1.1 | |
| 08/21/07 | DB meeting with JPD, KFC, CAL, MHM, JSK and LJG re: drafting of letter to Judge Cote regarding diversity jurisdiction. | CAL | 0.2 | |
| 08/21/07 | Address discovery/default issues with MM and MHM. | CAL | 0.2 | |
| 08/21/07 | Meeting with KFC, CAL, MHM, JSK and LJG regarding drafting of letter to Judge Cote regarding diversity jurisdiction; LLC issue; meet with MHM. | JPD | 0.4 | |
| 08/21/07 | Deutsche Bank meeting with JPD, KFC, CAL, MHM, JSK and LJG regarding drafting of letter to Judge Cote regarding diversity jurisdiction. | JSK | 0.2 | |

| | | | | | |
|---|---|---|---|---|---|
| 08/21/07 | DB meeting with JPD, KFC, CAL, MHM, JSK and LJG regarding drafting of letter to Judge Cote regarding diversity jurisdiction. | KFC | 0.2 | | |
| 08/21/07 | Deutsche Bank meeting with JPD, KFC, CAL, MHM, and JSK regarding drafting of letter to Judge Cote regarding diversity jurisdiction. | LJG | 0.2 | | |
| 08/21/07 | DB meeting with JPD, KFC, CAL, JSK and LJG regarding drafting of letter to Judge Cote regarding diversity jurisdiction. | MHM | 0.2 | | |
| 08/22/07 | Review order from Judge Cote regarding extension; discuss with MM; meeting with JPD, KFC, CAL & JSK. | MHM | 0.2 | | |
| 08/29/07 | Draft / review letter to Judge Cote with regard to LLC status; conference with BEZ. | MHM | 0.6 | | |
| | Total Hours | | 20.9 | | |
| | Total Fees | | | $ | 6,748.00 |
| | Disbursements Posted | | | | |
| | Duplicating | | 1.10 | | |
| | Telephone | | 0.34 | | |
| | Total Disbursements | | | $ | 1.44 |
| | TOTAL AMOUNT DUE | | | $ | 6,749.44 |

RFH
17988-00617

Invoice Number: **DRAFT**

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| **Partner** | | | |
| ( JPD ) Doherty, John P. | 4.4 | 400.00 | 1,760.00 |
| | | | |
| **Associate** | | | |
| ( KFC ) Cunningham, Kerry F. | 0.4 | 350.00 | 140.00 |
| ( LJG ) Goldberg, Lara J. | 0.2 | 250.00 | 50.00 |
| ( JSK ) Kozar, Jennifer S. | 0.2 | 250.00 | 50.00 |
| ( CAL ) Lynch, Christopher A. | 0.8 | 395.00 | 316.00 |
| ( MHM ) Mulhearn, Mary H. | 2.9 | 250.00 | 725.00 |
| ( BEZ ) Zahner, Brendan E. | 9.8 | 350.00 | 3,430.00 |
| | | | |
| **Legal Assistant** | | | |
| ( LD ) Droubi, Luna | 1.4 | 155.00 | 217.00 |
| | | | |
| **Administrative** | | | |
| ( JEW ) Wilson, Jonathan E. | 0.8 | 75.00 | 60.00 |
| | 20.9 | | |

Total Fees     $   6,748.00

Total Disbursements     $   1.44

TOTAL AMOUNT DUE     $   6,749.44

RFH
17988-00617



**Thacher Proffitt**

Thacher Proffitt & Wood LLP

Deutsche Bank Securities, Inc.
60 Wall Street
New York, NY 10005

Attn: Jay Strauss Esq.

PLEASE REMIT PAYMENT BY WIRE TO:

Citibank, N.A.
(ABA No. 021000089)
For the Account of:
Thacher Proffitt & Wood LLP
Account No. 37562867
Reference: RFH 17988-00617

Invoice Number **58885**

August 28, 2007

FEDERAL ID NO. 13-5612353

FOR PROFESSIONAL SERVICES rendered and

disbursements posted through July 31, 2007 with respect to

Maribella Mortgage, LLC, our services including:

| Date | Services | Atty. | Hours |
|------|----------|-------|-------|
| 07/02/07 | Meet with team; status. | JPD | 0.1 |
| 07/06/07 | Default judgment motions. | JPD | 0.1 |
| 07/11/07 | Work on motions for default. | JPD | 0.2 |
| 07/13/07 | Prepare draft default judgment documents. | CAL | 0.5 |
| 07/18/07 | Review case file; gather and organize documents accordingly. | JNN | 0.3 |
| 07/19/07 | Prepare letter to the Honorable Denise Cote enclosing filed complaint. | JNN | 0.1 |
| 07/19/07 | Status meeting. | JPD | 0.1 |
| 07/20/07 | Review pleadings; locate and gather the Notice of Initial Pretrial Conference; prepare letter enclosing same; serve accordingly; hand deliver courtesy copy of the filed complaint to the Honorable Denise Cote. | JNN | 0.7 |
| 07/23/07 | Prepare Affidavit of Service of the Notice of Initial Pretrial Conference; coordinate public notarization accordingly; arrange for docketing; work on file pleading log. | JNN | 0.7 |
| 07/25/07 | Work on file pleading log; case file management. | JNN | 0.2 |
| 07/26/07 | Work on default motion. | JPD | 0.3 |
| 07/30/07 | Review/revise default judgment papers. | CAL | 0.6 |
| 07/30/07 | Work on default motion. | JPD | 0.3 |

Invoice Number: **58885**

| | | | | |
|---|---|---|---|---|
| 07/31/07 | Review/revise default papers; address procedural issues. | CAL | 0.8 | |
| 07/31/07 | Letter to Judge Cote; work on Rule 26 disclosures; prepare for status conference. | JPD | 0.3 | |
| | Total Hours | | 5.3 | |
| | Total Fees | | | $   1,575.00 |
| | Disbursements Posted | | | |
| | Postage Expense | | 1.14 | |
| | Total Disbursements | | | $        1.14 |
| | TOTAL AMOUNT DUE | | | $   1,576.14 |

RFH
17988-00617

Invoice Number: **58885**

| Attorney Summary Attorney | Hours | Rate | Total |
|---|---|---|---|
| Partner ( JPD ) Doherty, John P. | 1.4 | 400.00 | 560.00 |
| Associate ( CAL ) Lynch, Christopher A. | 1.9 | 350.00 | 665.00 |
| Legal Assistant ( JNN ) Novikov-Carles, Jackeline N. | 2.0 5.3 | 175.00 | 350.00 |
| Total Fees | | | $ 1,575.00 |
| Total Disbursements | | | $ 1.14 |
| TOTAL AMOUNT DUE | | | $ 1,576.14 |

RFH
17988-00617



**Thacher Proffitt**

Thacher Proffitt & Wood LLP

Deutsche Bank Securities, Inc.
60 Wall Street
New York, NY 10005

Attn: Jay Strauss Esq.

PLEASE REMIT PAYMENT BY WIRE TO:

Citibank, N.A.
(ABA No. 021000089)
For the Account of:
Thacher Proffitt & Wood LLP
Account No. 37562867
Reference: RFH 17988-00617

Invoice Number **57605**

July 24, 2007

FEDERAL ID NO. 13-5612353

FOR PROFESSIONAL SERVICES rendered and

disbursements posted through June 30, 2007 with respect to

Maribella Mortgage, LLC, our services including:

| Date | Services | Atty. | Hours |
|------|----------|-------|-------|
| 06/08/07 | Meet with team; litigation issues; status email. | JPD | 0.1 |
| 06/08/07 | Conference with JPD, JSK, BEZ regarding status. | KFC | 0.1 |
| 06/11/07 | Status email; meet with BEZ and KFC; outline strategy; review court notices. | JPD | 0.1 |
| 06/12/07 | Emails with DBSP. | JPD | 0.1 |
| 06/14/07 | Review complaint; include claim damages amount to total sum. | JNN | 0.1 |
| 06/14/07 | Court status; status emails with DBSP. | JPD | 0.1 |
| 06/14/07 | Review, update and circulate lender spreadsheet. | JSK | 0.1 |
| 06/19/07 | Office conference with JPD, KFC and JSK regarding status and handling. | BEZ | 0.1 |
| 06/19/07 | Meet with TPW team; status email. | JPD | 0.1 |
| 06/19/07 | Office conference with JPD, KFC and BEZ regarding status of litigation. | JSK | 0.1 |
| 06/19/07 | Conference with JPD, BEZ, and JSK regarding strategy and status. | KFC | 0.1 |
| 06/25/07 | Status meeting; emails to DBSP regarding all matters. | JPD | 0.1 |
| 06/25/07 | Office conference with JPD, KFC, BEZ and MHM regarding status of litigation. | JSK | 0.1 |
| 06/26/07 | Status email. | JPD | 0.1 |

Invoice Number: **57605**

| Date | Description | | Hours | | |
|---|---|---|---|---|---|
| 06/27/07 | Filed original Summons with Affidavit of Service in SDNY. | JEW | 0.5 | | |
| 06/28/07 | Draft email regarding defaulting lenders. | BEZ | 0.1 | | |
| | Total Hours | | 2.0 | | |
| | Total Fees | | | $ | 550.00 |
| | Disbursements Posted | | | | |
| | Outside Duplicating | | 21.94 | | |
| | Process Service | | 275.00 | | |
| | Total Disbursements | | | $ | 296.94 |
| | TOTAL AMOUNT DUE | | | $ | 846.94 |

RFH
17988-00617

Invoice Number: **57605**

| Attorney Summary<br>Attorney | Hours | Rate | Total |
|---|---|---|---|
| Partner<br>( JPD ) Doherty, John P. | 0.7 | 400.00 | 280.00 |
| Associate<br>( KFC ) Cunningham, Kerry F.<br>( JSK ) Kozar, Jennifer S.<br>( BEZ ) Zahner, Brendan E. | 0.2<br>0.3<br>0.2 | 350.00<br>250.00<br>350.00 | 70.00<br>75.00<br>70.00 |
| Legal Assistant<br>( JNN ) Novikov-Carles, Jackeline N. | 0.1 | 175.00 | 17.50 |
| Administrative<br>( JEW ) Wilson, Jonathan E. | 0.5<br>2.0 | 75.00 | 37.50 |
| Total Fees | | | $     550.00 |
| Total Disbursements | | | $     296.94 |
| TOTAL AMOUNT DUE | | | $     846.94 |

RFH
17988-00617

# Thacher Proffitt

Thacher Proffitt & Wood LLP

PLEASE REMIT PAYMENT BY WIRE TO:

Citibank, N.A.
(ABA No. 021000089)
For the Account of:
Thacher Proffitt & Wood LLP
Account No. 37562867
Reference: RFH 17988-00617

Deutsche Bank Securities, Inc.
60 Wall Street
New York, NY 10005

Attn: Jay Strauss Esq.

Invoice Number **54899**

July 9, 2007

FEDERAL ID NO. 13-5612353

FOR PROFESSIONAL SERVICES rendered and

disbursements posted through May 31, 2007 with respect to

Maribella Mortgage, LLC, our services including:

| Date | Services | Atty. | Hours |
|------|----------|-------|-------|
| 03/02/07 | Work with JPD regarding litigation issues; review of purchase agreement regarding NY jurisdiction; research regarding personal jurisdiction; email to JPD regarding same; emails with LAA regarding research. | KFC | 2.4 |
| 03/02/07 | Office conference with JPD regarding case and research; research jurisdictional requirements; e-mails with KFC regarding same. | LAH | 0.3 |
| 03/13/07 | Meet with team; email to client; work on complaint and jurisdictional issues; meet with RFH. | JPD | 0.2 |
| 03/13/07 | Office conference with JPD, KFC, BEZ and MHM regarding matter; circulate and review documents provided by client; review sample complaint; office conference with BEZ regarding sample complaint. | JSK | 0.1 |
| 03/14/07 | Review transaction documents and demand letters received from client. | BEZ | 0.1 |
| 03/15/07 | Continue reviewing documents; begin drafting demand letter. | BEZ | 0.1 |
| 03/19/07 | Review transaction documents. | BEZ | 0.2 |
| 03/21/07 | Work on demand letters; team emails; meet with BEZ; email with Mr. Padish. | JPD | 1.3 |
| 03/21/07 | Document request | SS | 0.1 |
| 03/22/07 | Work on draft Complaint; review transaction documents. | BEZ | 0.4 |
| 03/22/07 | Review of documents from Deutsche Bank including Volume I of | KFC | 0.2 |

Invoice Number: **54899**

| | | | | |
|---|---|---|---|---|
| | Seller's Guide and applicable repurchase sections; telephone conference with BEZ regarding repurchase obligations and loan types; review of repurchase demands sent by Deutsche Bank; review of draft complaint for bulk sellers | | | |
| 03/22/07 | Meeting with BEZ discussing notice letter. | MHM | 0.2 | |
| 03/26/07 | Draft model Complaint for correspondent lenders; review documents relating to same. | BEZ | 0.4 | |
| 03/27/07 | Office conference with JPD regarding outstanding documents needed from client; prepare email to Mr. Paolini regarding same. | BEZ | 0.1 | |
| 03/28/07 | Draft outline of documents we have and need; prepare for and attend conference call with client; draft email to Mr. Lopena regarding same. | BEZ | 0.3 | |
| 03/28/07 | Review of outline for conference call regarding issues and outstanding documents; revised same; emails with BEZ regarding same; conference call with RFH, JPD, BEZ and Jay Strauss, Steve Paolini and Robert Lopena; office conference with BEZ, JPD, RFH regarding repurchase demands. | KFC | 0.1 | |
| 03/30/07 | Email from Mr. Lopena regarding documents; emails with DG regarding same; emails with KFC regarding same; email to KFC and JSK regarding status. | BEZ | 0.1 | |
| 04/04/07 | Work on demand letters; emails to Mr. Lopena; telephone conference with KFC; team emails; review materials provided by Deutsche Bank and SOF. | JPD | 0.2 | |
| 04/04/07 | Team emails regarding materials received to date; draft chart detailing what materials received for each lender; office and phone conferences with MHM, BEZ and JNN regarding same. | JSK | 0.2 | |
| 04/04/07 | Telephone conference and emails with JSK regarding chart for commitment letters and other information per lender; review of all documentation collected to date and determined what is still needed; email to JPD, RFH, BEZ and JSK regarding same. | KFC | 0.2 | |
| 04/05/07 | Work on demand letters; emails to Mr. Lopena; telephone conference with KFC; team emails; review materials provided by Deutsche Bank and SOF. | JPD | 0.2 | |
| 04/05/07 | Telephone conference with JPD regarding status of information gathering for repurchase demands and complaint; drafted email to Robert Lopena regarding same. | KFC | 0.1 | |
| 04/09/07 | Office conference with JPD and KFC regarding status and outstanding documents; draft email to Mr. Lopena; revise demand letters. | BEZ | 0.2 | |
| 04/09/07 | Work on demand letters and complaints; email Mr. Strauss; revise email to Mr. Lopena. | JPD | 0.2 | |
| 04/09/07 | Telephone conference with JPD and BEZ regarding status of litigations for all lenders; reviewed all repurchase schedules; reviewed seller loan purchase agreements regarding demand | KFC | 0.2 | |

Invoice Number: **54899**

| | | | | |
|---|---|---|---|---|
| | requirements; | | | |
| 04/10/07 | Review Commitment letters for notice provisions. | BEZ | 0.3 | |
| 04/10/07 | Work on demand letter and complaint; meet with KFC and BEZ; emails with Mr. Lopena and Mr. Paolini. | JPD | 0.1 | |
| 04/11/07 | Work on demand letter and complaint; emails with client; meet with BEZ and KFC. | JPD | 0.4 | |
| 04/11/07 | Telephone conference with JPD and BEZ regarding demand letters for various sellers and other matters; review of additional commitment letters and schedules; reivew of repurchase schedules; email to Bob Lopena regarding same; email to Kelli Stenstrom regarding amendments to Seller Guide. | KFC | 0.1 | |
| 04/12/07 | Work on demand letter and complaint; emails with client; meet with BEZ and KFC. | JPD | 0.4 | |
| 04/12/07 | Review all amendments to Volume 1 of Seller Guide; reviewed purchase dates for all loans; office conferences with JPD and BEZ regarding demands and complaints. | KFC | 0.1 | |
| 04/13/07 | Work on demand letter and complaint; emails with client; meet with BEZ and KFC. | JPD | 0.4 | |
| 04/13/07 | Drafted repurchase demand. | KFC | 0.7 | |
| 04/13/07 | SOF: Provide closing documents to Litigation for Maribella. | SWT | 1.0 | |
| 04/16/07 | Work on demand letters and complaints; team emails. | JPD | 0.2 | |
| 04/17/07 | Work on complaint; team emails; meetings; email with client. | JPD | 0.3 | |
| 04/18/07 | Work on complaints; meet with BEZ, KFC and JSK; emails with Deutsche Bank. | JPD | 0.3 | |
| 04/18/07 | Research entities. | LD | 0.5 | |
| 04/19/07 | Work on complaints; meet with BEZ, JSK and KFC; emails with client; review seller files. | JPD | 0.3 | |
| 04/19/07 | Revise complaint; draft team email attaching complaints; office conferences with JPD and BEZ. | JSK | 0.3 | |
| 04/20/07 | Work on complaints; meet with BEZ, KFC and JSK. | JPD | 0.2 | |
| 04/20/07 | Revise complaints; office conferences with team regarding same; draft cover letter attaching revised complaints. | JSK | 0.2 | |
| 04/20/07 | Reviewed and revised complaint. | KFC | 0.7 | |
| 04/20/07 | Review draft complaint. | RFH | 0.1 | |
| 04/23/07 | Review loan files; update lender spreadsheet accordingly. | JNN | 0.2 | |
| 04/24/07 | Review the various commitment letters; fact investigation; create list related to paragraph 2C regarding same. | JNN | 0.1 | |

**Invoice Number: 54899**

| Date | Description | Initials | Hours | |
|------|-------------|----------|-------|---|
| 04/24/07 | Follow up regarding complaint, demand letters and commitment letters; meetings. | JPD | 0.1 | |
| 04/24/07 | Revised repurchase schedule for demand letter. | KFC | 0.2 | |
| 04/24/07 | Meeting with JSK, BEZ, KFC and JPD; review of documents; emails with team. | MHM | 0.5 | |
| 04/26/07 | Finalize Demand Letter. | JNN | 0.2 | |
| 04/26/07 | Oversee finalization and service of demand letters; emails with client. | JPD | 0.2 | |
| 04/26/07 | Review and finalize demand letters; team emails regarding same; draft cover letter to JPD attaching same; calculate total demand amount; revise commitment letters; emails to team attaching same; draft emails to and review emails from LD regarding status of incorporation; office conference with JPD and BEZ regarding complaint of demand letters. | JSK | 0.5 | |
| 04/26/07 | Finalizing and sending out demand letters. | MHM | 0.5 | |
| 05/08/07 | Prepare for filing and service of complaint upon registered agent. | BEZ | 0.5 | |
| 05/08/07 | Review recently received lenders' documents; update Spreadsheet accordingly; work on list of commitment letters; review lenders' files; gather and organize documents in preparation of complaint. | JNN | 0.5 | |
| 05/08/07 | Team meeting; oversee complaints for filing; emails with Deutsche Bank; review status chart. | JPD | 0.3 | |
| 05/10/07 | Draft and revise documents for filing of Complaint. | BEZ | 0.3 | |
| 05/10/07 | Research; finalize Summons and Model Civil Cover Sheet; organize accordingly. | JNN | 0.5 | |
| 05/22/07 | Revise complaints; telephone conference with KFC; team emails; updated chart; emails with Mr. Lopena and Ms. Stenstrom. | JPD | 0.2 | |
| 05/23/07 | Revise complaints; emails and telephone conference with Ms. Stenstrom; emails with Mr. Lopena; review email notifications. | JPD | 0.3 | |
| 05/24/07 | Prepare Complaint for filing. | BEZ | 0.4 | |
| 05/24/07 | Oversee preparation of complaints; telephone conference with Ms. Stenstrom; emails with DBSP; meet with BEZ, JSK and MHM; revise complaints; emails with Mr. Lopena; telephone conference with Mr. Lopena; email to Mr. Commaroto. | JPD | 0.4 | |
| 05/24/07 | Add K. Stenstrom language to complaint and revise complaint for filing; assemble complaint and exhibits for filing. | JSK | 0.3 | |
| 05/24/07 | Final preparation in filing of complaint. | MHM | 0.2 | |
| 05/25/07 | Finalize Complaint; supervise filing of same. | BEZ | 0.5 | |
| 05/25/07 | Purchased index number, filed complaint and Rule 7.1 Statement | JEW | 0.3 | |

| | | | | | |
|---|---|---|---|---|---|
| | and had Summons issued by clerk in SDNY. | | | | |
| 05/25/07 | Oversee filing of complaint; meet with BEZ and JSK; telephone conference with Ms. Stenstrom; emails with DBSP. | JPD | 0.5 | | |
| 05/25/07 | Prepare complaint for filing. | JSK | 0.2 | | |
| 05/29/07 | Office conferences with MHM and JTH regarding service and filing issues. | BEZ | 0.2 | | |
| 05/29/07 | Follow up regarding filing and service of complaints; emails with Ms. Stenstrom. | JPD | 0.2 | | |
| 05/30/07 | Follow up regarding service of process and related issues; meet with BEZ; oversee CD to client; emails with Ms. Stenstrom; handle Bloomberg news issues with Ms. Stenstrom and Ted Meyer at Deutsche Bank; emails regarding the same. | JPD | 0.2 | | |
| 05/31/07 | Follow up regarding filing and service; letter to Ms. Stenstrom. | JPD | 0.1 | | |
| | Total Hours | | 23.3 | | |
| | Total Fees | | | $ | 7,618.00 |
| | Disbursements Posted | | | | |
| | Duplicating | | 14.74 | | |
| | Federal Express | | 25.87 | | |
| | Local Transportation | | 41.57 | | |
| | Miscellaneous Filing Fee | | 350.00 | | |
| | Total Disbursements | | | $ | 432.18 |
| | TOTAL AMOUNT DUE | | | $ | 8,050.18 |
| RFH 17988-00617 | | | | | |

Invoice Number: **54899**

| Attorney Summary | Hours | Rate | Total |
|---|---|---|---|
| **Attorney** | | | |
| **Partner** | | | |
| ( JPD ) Doherty, John P. | 7.2 | 400.00 | 2,880.00 |
| ( RFH ) Hans, Richard F. | 0.1 | 400.00 | 40.00 |
| **Associate** | | | |
| ( KFC ) Cunningham, Kerry F. | 5.0 | 350.00 | 1,750.00 |
| ( LAH ) Herbert, Lisa A. | 0.3 | 300.00 | 90.00 |
| ( JSK ) Kozar, Jennifer S. | 1.8 | 300.00 | 540.00 |
| ( MHM ) Mulhearn, Mary H. | 1.4 | 250.00 | 350.00 |
| ( BEZ ) Zahner, Brendan E. | 4.1 | 350.00 | 1,435.00 |
| **Legal Assistant** | | | |
| ( LD ) Droubi, Luna | 0.5 | 155.00 | 77.50 |
| ( JNN ) Novikov-Carles, Jackeline N. | 1.5 | 175.00 | 262.50 |
| ( SS ) Sobhan, Siham | 0.1 | 155.00 | 15.50 |
| ( SWT ) Thomsen, Stacy W. | 1.0 | 155.00 | 155.00 |
| **Administrative** | | | |
| ( JEW ) Wilson, Jonathan E. | 0.3 | 75.00 | 22.50 |
| | 23.3 | | |

| | | |
|---|---|---|
| Total Fees | $ | 7,618.00 |
| Total Disbursements | $ | 432.18 |
| TOTAL AMOUNT DUE | $ | 8,050.18 |

RFH
17988-00617

# EXHIBIT  F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DB STRUCTURED PRODUCTS, INC.

                Plaintiff,

       -against-

 

 

MARIBELLA MORTGAGE, LLC

              Defendant.

**ECF CASE**

**07 Civ. 4120 (DLC)**

## DEFAULT JUDGMENT

      This action having been commenced on May 25, 2007 by the filing of the Complaint, and a copy of the (i) Complaint; (ii) Summons; (iii) Explanation of Relatedness; (iv) Statement Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure; (v) Civil Cover Sheet; (vi) Individual Practices of Judge Denise Cote; (vii) Individual Rules of Practice of Judge Kevin Nathaniel Fox; (viii) 3rd Amended Instructions For Filing An Electronic Case or Appeal; (ix) Procedures for Electronic Case Filing; and (x) Guidelines for Electronic Case Filing having been properly served on the defendant, Maribella Mortgage, LLC ("Defendant") on June 5, 2007 by personally serving Defendant's registered agent, Keith White, 3600 Minnesota Drive #160, Edina, MN 55435, and a proof of service having been filed on June 27, 2007, and the Defendant not having answered the Complaint, and the time for answering the Complaint having expired, it is

      **ORDERED** that Plaintiff have judgment against Defendant in the liquidated amount of $12,569,738.18 with interest at $2,852.49 per diem from 04/19/07 through 10/12/07 amounting

to \$504,890.73, and attorneys' fees and costs in the amount of \$17,222.70, amounting in all to \$13,091,851.61; and it is further

**ORDERED** that within thirty (30) days following payment in full of the amount awarded by this Default Judgment, Plaintiff shall return to Defendant the Mortgage Loans[1] as set forth in the Purchase Agreement.

Dated: New York, New York

_____

_____

**United States District Judge**

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Complaint.